UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWIN BANKS,

                    Plaintiff,

          -against-

BELLEVUE HOSPITAL; JOHN DOE #1;
JOHN DOE #2; JOHN DOE #3; JOHN DOE #4,

                    Defendants.

24-CV-0369 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently a civilly committed detainee at Central New York Psychiatric Center, brings this *pro se* action under 42 U.S.C. § 1983. He asserts that he was subjected to unlawful medical procedures while in the custody of both the New York State Department of Corrections and Community Supervision and the New York City Department of Correction. Named as defendants are Bellevue Hospital and four John Doe defendants. By order dated April 22, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court grants Plaintiff 60 days' leave to file an amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009),

and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the complaint. In or around November or December 2007, while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Southport Correctional Facility, Plaintiff "became sick from food contamination." (ECF 1 ¶ 6.)[1] He believes that correction officers at the facility were contaminating his food in retaliation for his filing of complaints and grievances about their

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

misconduct. Plaintiff suffered from "extreme" stomach pain, which became "unbearable" when he ate, causing him to stop eating for a couple of days. (*Id*. ¶¶ 8-9.) Correction officials "ignored and mishandled" his complaints of the food contamination and he did not receive proper medical care for the stomach pain. (*Id*. ¶ 10.) To bring attention to the matter, Plaintiff went on a "hunger strike; he did not eat for about "28 days straight." (*Id*. ¶ 11.) On or about February 18, 2008, Plaintiff was sent to Ogden Medical Center ("Ogden") for an evaluation in preparation for a "force feeding court proceeding" scheduled for a few days later. (*Id*. ¶ 12.) At Ogden, Plaintiff was examined by Joseph Haluska, who, without Plaintiff's consent, "injected a substance into [his] groin area under [his] testes," and told Plaintiff that he would "experience buzzing in [his] legs but it would go away." (*Id*. ¶ 14.) The buzzing, however, "hasn't gone away and has only gotten worse," and Plaintiff continues to experience complications from the injection. (*Id*.)

In or around September 2013, at Upstate Correctional Facility, Plaintiff was given a tuberculosis ("TB") shot, after which he experienced blood in his stool for about three months. The medical staff at Upstate "refuse to take [the matter] serious[ly]." (*Id*. ¶ 17.) Furthermore, since the TB shot, he can feel "whatever Haluska injected [him] with . . . mov[ing] back and forth between [his] legs and digestive system," and "causing [him] all types of problems – including health problems." (*Id*. ¶ 18.) The "buzzing sensation" in his abdomen caused by the injection, which mostly happens when he is trying to sleep" is "causing interference with the digestion of [his] food" and "depriving him of sleep." (*Id*. ¶¶ 19-20.) The injection has also "caus[ed] [him] major disturbances and has subjected [him] to mysterious physical injuries." (*Id*. ¶ 24.)

For years, Plaintiff has attempted to find out exactly what Haluska injected into him but he has been unsuccessful. In or about September 2020, Plaintiff was admitted to Bellevue

Hospital from Rikers Island, and he informed the medical staff of his digestive issues. He was told that they would get his medical records to see what he was injected with, but he was discharged two or three weeks later without anything being done.

Around September 2021, Plaintiff was sent back to Bellevue from Rikers Island, where he was, against his will, "injected with an unknown substance" by a doctor in the hospital's emergency room. (*Id.* ¶ 27.) Although Plaintiff "yelled out loud in pain for [the doctor] to stop," the doctor refused to do so. (*Id.*) The injection left Plaintiff's arm "massively swollen." (*Id.*)

After the injection, Plaintiff was admitted to Bellevue's medical unit for further observation and treatment. While at the hospital, he "ended up mysteriously catching Covid even though [he] was bed ridden and didn't leave the room." (*Id.* ¶ 28.) He stayed in the hospital's medical unit for about ten days and then was transferred to the mental health unit.

While Plaintiff was detained in the mental health unit, a doctor told him he would get his medical records from Ogden to look into his digestive problems. The doctor, however, "only made a half-hearted attempt," getting only seven pages of Plaintiff's medical record, which said nothing about Haluska's injection. (*Id.* ¶ 8-9.)

At Bellevue, a doctor also ordered that Plaintiff's blood "be forcefully withdrawn against his will for non-emergency reasons on 3 different occasions." (*Id.* ¶ 30.) Several staff members held Plaintiff down and "forcefully" took his blood over his objections. (*Id.*)

Over the years, Plaintiff has "become very suspicious" that Haluska had conducted "some type of experiment or something" and that unspecified persons are "withholding" information from him, "trying to make it seem like [he is] suffering from mental health issues." (*Id.* ¶ 31.) In 2021, Plaintiff contacted Haluska and asked him what he had injected, but Haluska "was very dismissive and told [him] to review the hospital records." (*Id.* ¶ 32.) In September

2021, Plaintiff obtained 75 pages of his medical records from Ogden Medical Center, "which hinted that some type of procedure was done," but did not identify the substance that Haluska had injected into him. (*Id*. ¶ 33.) Plaintiff also contacted Ogden, but the hospital was "unwilling to help [him] navigate the information in the record." (*Id*. ¶ 34.) As a result of the substance that was injected into him, Plaintiff is "being tortured and tormented" and believes that the injection "was done out of retaliation for [his] filing complaints and grievances against Southport's staff." He asserts the following:

> I have been going through this for around 10 years, and since 2015 they have been covering this up and misdiagnosing me and making it seem like it's all a mental health issue, in which they have been comitting me to psychiatric institutions and trying to keep me there medicade up because of my eating habits which is due to me fasting a lot as part of my spiritual practices and to maintain my digestive issues.

(*Id*. ¶ 36.)

Plaintiff brings this action against Bellevue Hospital and four John Doe defendants. He identifies John Doe 1 as the doctor at Bellevue who allegedly "assaulted and battered" him in the emergency room by injecting him against his will with an unknown substance. (*Id*. ¶ 47.) Plaintiff states that John Doe 2 is the doctor at Bellevue who allegedly "assaulted and battered" him by having his blood drawn without his consent for "nonemergency reasons." (*Id*. ¶ 48.) He further identifies John Doe 3 as Ogden Medical Center for its failure to protect him from Haluska's injection, and John Doe 4 as Haluska for "illegally" injecting him with an unknown substance. (*Id*. ¶¶ 43-46.)

Plaintiff seeks the following relief: (1) the appointment of a "special master" to investigate Haluska's injection of the unknown substance and the subsequent cover up; (2) a declaration that his right to practice his "religion should not be interfered with by introducing foreign substances/objects into [his] body, or withdrawing any fluids from [his] body, which

both prevents [him] from dedicating [his] body as a temple to God"; and (3) money damages. (*Id.* ¶¶ 55-58.)

## DISCUSSION

### A.    Untimely Claims

Liberally construed, Plaintiff's complaint alleges that he was forcibly subjected to medication and medical procedures without his consent, including the injections of unknown substances at Ogden Medical Center and Bellevue Hospital and the drawing of his blood at Bellevue. He also asserts that he received inadequate treatment for his digestive problems while in DOCCS custody and has been unable to access his full medical records. Plaintiff's claims arising out of events occurring between 2008 and 2020 appear to be untimely.

The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Here, Plaintiff alleges that there were instances of forced medication or medical procedures that occurred between 2007 and 2020. Because Plaintiff did not file this complaint until January 12, 2024, any claims arising before January 12, 2021 appear to be untimely.

The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.'" *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (citation omitted). The statute of limitations may be equitably tolled, for example, when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego

a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. In addition, New York law provides that where a person "is under a disability because of . . . insanity at the time the cause of action accrues," the applicable statute of limitations will be tolled. N.Y. C.P.L.R. § 208; *Gardner v. Wansart*, No. 05-CV-3351 (SHS) (GWG), 2006 WL 2742043, at *5 n.4 (S.D.N.Y. Sept. 25, 2006) (although mental illness is on its own insufficient for equitable tolling purposes, tolling is appropriate if a plaintiff is insane at the time the cause of action accrues and is "unable to protect [his] legal rights because of an overall inability to function in society"). New York also provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.*, N.Y. C.P.L.R. § 204(a) (where commencement of an action has been stayed by court order), *id.* § 204 (where a dispute has been submitted to arbitration but is ultimately determined to be non-arbitrable), *id.* § 207(3) (defendant is outside New York at the time the claim accrues), *id.* § 208 (plaintiff is disabled by infancy or insanity), *id.* § 210 (death of plaintiff or defendant).

Plaintiff does not provide any facts suggesting that the statute of limitations should be equitably tolled in this case with respect to any claims arising before 2021. Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." (internal quotation marks and citation omitted)); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte*

dismissal of complaint as frivolous on statute of limitations grounds); *see also Abbas*, 480 F.3d at 640 (concluding that district court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on statute of limitations grounds).

Normally, the Court would grant Plaintiff leave to plead any facts showing that equitable tolling applies to the untimely claims, but Plaintiff's factual allegations regarding incidents of alleged forced medication or medical procedures occurring between 2007 and 2020 arose at facilities (Elmira, Southport, and Upstate) and a hospital (Ogden Medical Center) outside this district. Elmira and Southport are located in Chemung County, New York, in the Western District of New York, which, according to Plaintiff, is also where Ogden Medical Center is located. *See* 28 U.S.C. § 112(d). Upstate is in Franklin County, New York, in the Northern District of New York. *See* 28 U.S.C. § 112(a). Because Plaintiff's claims that occurred outside this district are untimely, the Court declines to sever and transfer them to the appropriate courts.[2]

## B.    Forcible Injection and Drawing of Blood at Bellevue

Plaintiff's remaining claims arise out of his September 2021 visit to Bellevue from Rikers Island. His assertions of being injected with an unknown substance and the forcible drawing of his blood three times may have implicated his rights under the Fourteenth Amendment, and possibly the Fourth Amendment.

### 1.    Fourteenth Amendment

The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. *See, e.g., Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty

---

[2] Nothing in this order, however, prohibits Plaintiff from pursuing his federal and corresponding state law claims that arose outside this district in the appropriate courts.

interest in refusing unwanted medical treatment"); *Kulak v. City of N.Y.*, 88 F.3d 63, 74 (2d Cir.1996) ("It is a firmly established principle of the common law of New York that every individual of adult years and sound mind has a right to determine what shall be done with his own body and to control the course of his medical treatment." (quotations omitted)). A state actor forcibly medicating a patient is unconstitutional "absent a finding of overriding justification and a determination of medical appropriateness" by a medical professional. *Riggins v. Nevada*, 504 U.S. 127, 135 (1992); *see Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (recognizing a prisoner's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment").

"[I]t is well-settled [however] that a patient's liberty interest in not being involuntarily medicated is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of physical harm to that patient, other patients, or to staff members of the institution." *Odom v. Bellevue Hosp. Ctr.*, No. 93-CV-2794 (CSH), 1994 WL 323666, at *3 (S.D.N.Y. July 5, 1994); *see, e.g.*, *Kulak*, 88 F.3d at 74 ("Such a right may be set aside only in narrow circumstances, including those where the patient 'presents a danger to himself or other members of society or engages in dangerous or potentially destructive conduct within the institution.'"). A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323, (1982). "This standard requires more than simple negligence on the part of the doctor but less than deliberate indifference." *Kulak*, 88 F.3d at 75.

Here, it is not clear whether Plaintiff can state a claim that he was medicated without due process. Plaintiff asserts that, at Bellevue, he was injected with an unknown substance that caused him pain, the doctor refused to stop the injection although he was yelling in pain, and the injection left his arm "massively swollen." (ECF 1 ¶ 27.) However, Plaintiff provides no factual context for his claims. For example, he does not state why he was at Bellevue, what events occurred leading up to his being medicated, or that he refused the medication before it was administered. Nor does Plaintiff allege sufficient facts suggesting that the alleged injection was administered without court authorization after his refusal, or in the absence of an emergency situation.

In light of Plaintiff's *pro se* status, the Court grants Plaintiff 60 days' leave to replead his September 2021 injection claims, in an amended complaint, by providing facts supporting his claim that he was forcibly medicated with an unknown substance against his will, without due process, in the absence of an emergency health situation. Plaintiff must also name as defendants all individuals who could be held responsible for this alleged violation.

### 2.    Fourth Amendment

Plaintiff's assertions that his blood was forcibly drawn on three different occasions at Bellevue may implicate the Fourth Amendment, which protects individuals from unreasonable government intrusions into areas in which they have an expectation of privacy that society accepts as objectively reasonable. *See United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008). Searches and seizures of bodily fluids, such as blood, are subject to constitutional considerations under the Fourth Amendment. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2178 (2016); *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 624 (1989); *United States v. Amerson*, 483 F.3d 73, 84 (2d Cir. 2007). While the drawing of bodily fluids for law enforcement purposes or at the request of law enforcement officers triggers the Fourth Amendment, *see Ferguson v. City*

*of Charleston*, 532 U.S. 67, 83 (2001) (holding that blood samples could not be turned over to law enforcement without consent or a warrant where "the immediate objective of the searches was to generate evidence for law enforcement purposes"), "[w]here blood or urine samples are taken for medical purposes, rather than to facilitate prosecution of the patient, the Fourth Amendment is not implicated," *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *5 (S.D.N.Y. Sept. 18, 2019); *see Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) (holding blood and urine tests "undertaken to facilitate [the plaintiff's] diagnosis and treatment" were "constitutionally permissible" because they "were not conducted for any law enforcement purpose").

Plaintiff does not state facts suggesting that his right under the Fourth Amendment to be free from unreasonable searches and seizures was violated when his blood was drawn at Bellevue. The complaint indicates that the medical staff drew his blood for medical purposes; there are no allegations suggesting that Plaintiff's blood was taken for law enforcement purposes. The drawing of a blood sample is considered to be a minor intrusion that is routinely done for medical purposes. *See Skinner*, 489 U.S. at 625 ("[T]he intrusion occasioned by a blood test is not significant, since such tests are commonplace in these days of periodic physical examinations and experience with them teaches us that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." (internal quotation marks omitted)). Based on the facts alleged, the drawing of Plaintiff's blood was reasonable, and he therefore fails to state a plausible claim for relief under the Fourth Amendment.

## C.  Access to Medical Records

To the extent Plaintiff is asserting claims arising out of his inability to obtain his medical records relating to the 2008 procedure at Ogden Medical Center, including through the staff at Bellevue, such a claim must be dismissed. A prisoner has no constitutional right to review or

obtain copies of his prison medical records. *See Moore v. Chapdelaine*, No. 3:15-CV-775

(VAB), 2015 WL 4425799, at *3 (D. Conn. July 17, 2015) (finding that, although the Second

Circuit has not addressed the issue, a prisoner's claim of denial of access to prison medical

records "cannot amount to a constitutional violation") (collecting cases); *see also Canady v.

Correct Care Sols.*, No. 15-CV-4893 (KMK), 2017 WL 4280552, at *15 n. 11 (S.D.N.Y. Sept.

25, 2017) (noting that "a prisoner has no constitutional right to access or obtain copies of his

prison mental health records" (citing *Moore*, 2015 WL 4425799, at *3 (internal quotation marks

omitted))). Plaintiff therefore cannot state a constitutional claim based on his assertions that the

staff at Bellevue violated his rights by failing to obtain his prison medical records for him.

**D.    Bellevue Hospital**

Plaintiff cannot pursue claims against Bellevue for the alleged injection or any other

claim. "It is well established that a hospital is not a 'person' [for the purposes of] Section 1983"

liability. *Mejía v. Davis*, No. 16-CV-9706 (LJL), 2018 WL 333829, at *4 (S.D.N.Y. Jan. 8, 2018)

(collecting cases); *Kearse v. Lincoln Hosp.*, No. 07-CV-4730 (PAC) (JCF), 2009 WL 1706554, at

*2 (S.D.N.Y. June 17, 2009) (hospital not a "person" within meaning of Section 1983). Bellevue

is operated by New York City Health+Hospitals ("H+H"), which is a public benefit corporation

created by New York State law. To pursue his claims for alleged violations occurring at Bellevue,

Plaintiff would have to bring claims against H+H, which can be sued under Section 1983. *See*

N.Y. Unconsol. Laws §§ 7384(1), 7385(1); *see also Mejia*, 2018 WL 3442977, at *5 ("As a

municipal corporation, [H+H] and its employees are state actors for purposes of Section 1983.").

To state a claim under Section 1983 against a municipal entity such as H+H, it is not

enough for Plaintiff to allege that one of its employees or agents engaged in some wrongdoing.

Plaintiff must show that the entity itself caused the violation of his rights. *See Connick v.*

*Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978))). He must allege facts showing (1) the existence of an H+H policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Rookard v. Health & Hosp. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) (applying standard for Section 1983 municipal liability to H+H).

While Plaintiff asserts that John Doe doctors at Bellevue forcibly medicated him, he does not allege facts suggesting that a policy, custom, or practice of H+H caused a violation of his federal constitutional rights. The Court therefore dismisses any claims Plaintiff seeks to assert against H+H for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court, however, grants Plaintiff leave to amend his complaint to bring a claim against H+H and to plead facts suggesting that H+H's policy, custom, or practice caused the violation of his rights.

## E.    Claims under State Law

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Because the Court is granting Plaintiff leave to file an amended complaint, the Court will determine at a later stage whether to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See*

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### F.    Denial of Application for *Pro Bono* Counsel

Plaintiff submitted an application for the Court to request *pro bono* counsel. (ECF 4.) The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers*, 802 F.2d 58, 60-62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Because it is too early in the proceedings for the Court to assess the merits of the action, Plaintiff's motion for counsel is denied without prejudice to Plaintiff' s renewing such an application at a later date.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In an abundance of caution, the Court grants Plaintiff 60 days' leave to file an amended complaint to detail his claims of being forcibly medicated at Bellevue Hospital in September 2021.

Plaintiff must name as the defendant(s) in the caption[3] and in the statement of claim those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[4] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

   a) the names and titles of all relevant people;

   b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

---

[3] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the amended complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[4] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2010, at Sullivan Correctional Facility, during the 7-3 p.m. shift."

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's claims against Bellevue Hospital for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff 60 days' leave to replead his claims in an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 24-CV-0369 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will direct the Clerk of Court to enter judgment consistent with this order.

The Court denies Plaintiff's application for the Court to request *pro bono* counsel (ECF 4) without prejudice to renewal at a later date. All other pending matters in this case are terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

  Dated:    August 6, 2024
            New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

**AMENDED**

**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.     PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

---

First Name                    Middle Initial                    Last Name

---

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

---

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

---

Current Place of Detention

---

Institutional Address

---

County, City                                     State                         Zip Code

## III.     PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State              Zip Code

Defendant 2:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State              Zip Code

Defendant 3:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State              Zip Code

Defendant 4:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                              State              Zip Code

## V.     STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6